UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

ANDREA MADDOX, on behalf of herself and
Others similarly situated,

                                        Plaintiffs,

          - against -                                                    **CLASS ACTION**
                                                                         **COMPLAINT**

THE COUNTY OF SUFFOLK, THE INCORPORATED
VILLAGE OF WESTHAMPTON BEACH,                                            **Jury Trial Demanded**
M & T BANK, DENNIS M. BROWN, Individually,
LEONARD KAPSALIS, Individually, DREW W.
SCHIRMER, Individually, JACQUELINE CAPUTI,
Individually, THE TOWN OF EAST HAMPTON and
THE INCORPORATED VILLAGE OF SOUTHAMPTON,

                                        Defendants.
----------------------------------------------------------------------X

          Plaintiff, Andrea Maddox, on behalf of herself and others similarly situated, by and

through her attorneys, CAMPANELLI & ASSOCIATES, P.C., respectfully alleges as follows:

## I.    Nature of This Action

          1.    Plaintiff Andrea Maddox brings this case both on behalf of herself, and as a Class

action, seeking a declaratory judgment, injunctive relief, compensatory damages, punitive

damages, costs and attorneys fees, pursuant to 42 U.S.C. §§1983 and §1988, for deprivation of

plaintiff's rights, and the rights of those similarly situated, which are secured by the Fourteenth

Amendment to the United States Constitution.

          2.    The plaintiff and those similarly situated were the owners and/or lessees of

motor vehicles that were seized by the County of Suffolk and the other municipal defendants

herein.

1

3.      The plaintiff asserts that the defendants herein deprived both the plaintiff, and hundreds of others who are similarly situated, of their respective property interests in their ownership, possession, and use of motor vehicles, without Due Process of law.

4.      In addition, the defendants deprived both the plaintiff and others who are similarly situated, of property rights, statutory protections and contractual rights guaranteed to them under New York State laws, including but not limited to, New York Personal Property Law §302 and New York General Obligations Law §7-401.

5.      In 1998, The United States Court of Appeals for The Second Circuit affirmatively ruled that when municipalities, such as the defendants, seize motor vehicles from their owners, the municipality cannot thereafter release those vehicles to third parties without the owners' consent, unless they first afford the owner with notice and a procedure through which the owners could challenge the unauthorized release of their vehicles to such third parties. *See* Alexandre v. Cortes, 140 F.3d 406, 412 (2nd Cir. 1998).

6.      In a crystal-clear ruling which left no doubt as to *why New York City's* rules pertaining to the release of seized vehicle were unconstitutional at that time, The Court of Appeals for the Second Circuit unequivocally pronounced in Alexandre:

> "A fatal flaw in the City Rules is that they provide no notice or procedure for the resolution of disputes concerning the ownership of an automobile prior to authorizing its release to a lienholder."

> Alexandre v. Cortes, 140 F.3d 406, 412 (2nd Cir. 1998).

2

7.    Despite the passage of more than twenty (20) years from that U.S. Court of Appeals' decision, the individual County defendants who control, oversee and are employed at, the Office of the Suffolk County Attorney, systematically release and cause the release of, seized vehicles to lienholders and other third parties, without affording the owners of those vehicles with notice, or a procedure through which to contest such unauthorized release of their vehicles.

8.    Moreover, these deliberate violations of vehicle owners' clearly-established rights are exacerbated by the fact that the individual County defendants "go even further" by conditioning their release of such vehicles to third parties, such as lienholders, upon the lienholders agreeing to never return the vehicles to their respective owners, without affording the owners with any form of hearing, judicial proceeding or determination regarding the owners' respective rights to own, use and possess their respective motor vehicles.

9.    These "conditions" unilaterally imposed by the defendants additionally deprive vehicle owners of both statutory and contractual rights of redemption vested in them under New York State Laws, which explicitly: (a) statutorily mandate that every automobile finance agreement contain a provision vesting the owner with a right to redeem vehicles in the case of a default *See* New York State Personal Property Law §302, and (b) vest every purchaser of a motor vehicle with a <u>statutory right</u> to redeem and retake physical possession of their vehicle upon curing any default under the terms of their respective finance agreement. *See* New York General Obligations Law §7-401.

10.    Even worse, in many cases the defendants seize and dispose of owner's vehicles, despite the fact that, as in plaintiff Andrea Maddox's case, the owner of such vehicle has never been convicted of, or plead guilty to, any criminal offense, violation, or even a traffic offense, based upon which their respective vehicle has been seized by the defendants.

3

11.     By depriving the plaintiff and others similarly situated of: (a) their rights to own, possess and use their respective automobiles without notice or a hearing, and (b) their statutorily created and protected rights to redeem, the defendants have deprived the plaintiff, and others who are similarly situated, of valuable property rights and statutory rights, without due process of law, in violation of their U.S. Constitutional Rights as guaranteed them under the Fourteenth Amendment to the United States Constitution.

12.     The plaintiff seeks Class action certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## II.     Jurisdiction and Venue

13.     Jurisdiction is conferred on this Court by 28 U.S.C. §§1343(a)(3) and §1343(a)(4), which provide for original jurisdiction in the Court for all suits brought pursuant to 42 U.S.C. §1983.

14.     Jurisdiction is conferred on this Court by 28 U.S.C. §1331 because the cause of action arises under the Constitution and laws of the United States.

15.     The supplemental jurisdiction of the District Court is invoked pursuant to 28 U.S.C. §1367 for inter-related state claims which arise from the occurrences giving rise to the federal claims and which have a common nucleus of operative fact.

16.     Venue lies in the Court pursuant to 28 U.S.C. §1391(b)(ii) in that Suffolk County is the underlying County for purposes of venue and where the vast majority of the events occurred.

### III.    The Parties

17.    Plaintiff, Andrea Maddox is an individual residing in Westhampton Beach, within the County of Suffolk, State of New York.

18.    Upon information and belief, the defendant THE COUNTY OF SUFFOLK is a municipal corporation organized and operating under New York State law, with a principal place of business situated at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

19.    Upon information and belief, the defendant THE INCORPORATED VILLAGE OF WESTHAMPTON BEACH (hereinafter referred to as the "Village of Westhampton Beach") is an incorporated village organized and operating under New York State law, with a principal place of business situated at 165 Mill Road, Westhampton Beach, NY 11978.

20.    Upon information and belief, the defendant M&T BANK is an entity organized and operating under New York State law, with a principal place of business situated at One M&T Plaza, Buffalo, NY 14203.

21.    Upon information and belief, the defendant DENNIS M. BROWN is an individual with an actual place of business and/or employ located at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

22.    Upon information and belief, at all relevant times described herein, defendant Dennis M. Brown was employed as The County Attorney of The County of Suffolk, whose actual place of employ was within the Office of the County Attorney, which was, and is, situated at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

23.    Upon information and belief, the defendant LEONARD KAPSALIS is an individual with an actual place of business and/or employ located at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

24.     Upon information and belief, at all relevant times described herein, defendant Leonard Kapsalis was employed as a supervising Assistant County Attorney in The Office of the Suffolk County Attorney, whose actual place of employ was, and is, situated at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

25.     Upon information and belief, the defendant DREW W. SCHIRMER is an individual with an actual place of business and/or employ located at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

26.     Upon information and belief, at all relevant times described herein, defendant Drew Schirmer was employed as an Assistant County Attorney in The Office of the Suffolk County Attorney, whose actual place of employ was, and is, situated at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

27.     Upon information and belief, the defendant JACQUELINE CAPUTI is an individual with an actual place of business and/or employ located at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

28.     Upon information and belief, at all relevant times described herein, defendant Jacqueline Caputi was employed as an Assistant County Attorney in The Office of the Suffolk County Attorney, whose actual place of employ was, and is, situated at 100 Veterans Memorial Highway, Hauppauge, NY 11788.

29.     The four individually-named defendants: Dennis M. Brown, Leonard Kapsalis, Drew Schirmer, and Jacqueline Caputi, are collectively referred to herein below as "*the individual County defendants*," and these four defendants *together with* the defendant County of Suffolk are collectively referred to herein below as "*the County defendants*."

6

30.    Upon information and belief, the defendant THE INCORPORATED VILLAGE OF WESTHAMPTON BEACH (hereinafter referred to as the "Village of Westhampton Beach") is an incorporated village organized and operating under New York State law, with a principal place of business situated at 165 Mill Road, Westhampton Beach, NY 11978.

31.    Upon information and belief, at all times described herein, The Westhampton Beach Police Department was, and remains, an agency of The Village of Westhampton Beach.

32.    Upon information and belief, the defendant THE INCORPORATED VILLAGE OF SOUTHAMPTON (hereinafter referred to as the "Village of Southampton") is an incorporated village organized and operating under New York State law, with a principal place of business situated at 23 Main Street, Southampton, NY 11968.

33.    Upon information and belief, the defendant THE TOWN OF EAST HAMPTON (hereinafter referred to as the "Village of East Hampton") is an incorporated village organized and operating under New York State law, with a principal place of business situated at 159 Pantigo Road, East Hampton, NY 11937.

## IV.    Preliminary Facts

34.    More than twenty (20) years ago, the United States Circuit Court of Appeals for the Second Circuit affirmatively ruled in <u>Alexandre v. Cortes</u>, 140 F3d.406 (2nd Cir. 1998), that when a municipality seizes a motor vehicle from its owner, the constraints of the Due Process clause prohibit such municipality from thereafter releasing such vehicle to a third party, without first affording the owner both: (a) notice of its intention to release their vehicle to a third party, and (b) a procedure through which the owner is afforded the opportunity to object to the release of their vehicle to such third party, before it is released to such third party.

35.    With the Court of Appeals for the Second Circuit having rendered its decision in <u>Alexandre</u> more than two decades ago, the due process requirements pronounced therein constitute "clearly established law" of which any reasonable County Attorney who oversees, supervises, or plays a role in determining custody of seized motor vehicles would be well aware.

36.    Upon information and belief, acting with actual knowledge of, *and in willful defiance of* The United States Circuit Court of Appeals' ruling in <u>Alexandre</u>, the defendants herein have implemented, and systematically maintained, a *non-judicial* administrative practice of disposing of seized vehicles by releasing them to third parties, while intentionally depriving the owners of those vehicles of both notice, or any hearing or procedure through which the owners could object to the release of their vehicles to such third parties.

37.    The County defendants contemporaneously exacerbate the U.S. Constitutional deprivations and injuries inflicted upon vehicle owners, because in releasing the vehicles to third parties, the County defendants unilaterally impose two "conditions" upon such third parties, outside of any judicial review, and without any effort on the part of the County to pursue a judicial disposition of any type.

38.     First, without any notice to the vehicle owner, the County defendants purport to impress a supposed lien against each respective vehicle in amounts which often range from four thousand ($4,000.00) dollars to six thousand ($6,000.00) dollars for "storage charges," such amounts being more than twenty (20) times higher than the storage fees being charged in the adjacent County of Nassau for the similar storage of seized vehicles.

39.     Then, as a condition of releasing the vehicles to third parties, the County defendants require that: (a) the third parties sign a contractual agreement which provides that they will never release such vehicles back to their respective owners (or lessees), and (b) the third parties agree to pay the exorbitant "storage fees" which are arbitrarily assessed by the individual County defendants.

40.     Typically, the first time that an owner learns that the County defendants have released the owner's vehicle to a third party, is when the third party contacts the owner and advises the owner that:

(a)     the third party is now in possession of their vehicle;

(b)     irrespective of any right to redeem their vehicle contained in their finance agreement or lease agreement, and New York State law, which statutorily vests owners with a right of redemption, the owner or lessee *cannot* redeem their vehicle, because the County required the lienholder to sign an agreement wherein they contracted not to release their vehicle back to such owner;

(c)     the full remaining balance of their loan is now accelerated and due;

(d)     in addition, the owner must reimburse the lienholder for the $4,000.00 to $6,000.00 which the lienholder paid to the County; and finally

9

(e)     for each and every month that the owner does not pay the full amount of

the entire loan plus the storage fees, the lienholder will report the owners

default to the three major credit reporting agencies, and will

thereby virtually destroy the owner's credit rating.

41.     As part of this procedure, the County defendants maintain a website which

enables third parties to simply print out standard form agreements that have been prepared by the

individual County defendants who then caused them to be uploaded onto the County's website at

www.suffolkcountyny.gov.

42.     The County defendants instruct lienholders and leasing companies to print out,

complete, and return those agreements to the County Attorney's Office, after which the

individual County defendants then tell the lienholder how much they will have to pay for

"storage fees" and if the lienholder agrees to same, the County defendants then direct the release

of the respective vehicle to such lienholder or leasing company, without affording the owners of

such vehicles with notice or a hearing.

43.     Annexed hereto as Exhibit "A" is Suffolk County form "CA-4" which the County

defendants drafted, uploaded and made available online at the County's website for *lienholders*

to complete to secure the release of *liened* vehicles.

44.     To access the form, lienholders are directed to go to the County of Suffolk's

internet website, suffolkcountyny.gov, click on the heading entitled "Our Services," click on the

heading "Vehicle Seizures," and click on "Form CA-4" which then takes them to a subpage,

http://www.suffolkcountyny.gov/Portals/0/countyattorney/Forms/CA-4%20Default%20Lien.pdf,

from which they can download a copy of the form which is attached hereto as Exhibit "A."

45.    Annexed hereto as Exhibit "B" is Suffolk County form "CA-5" which the County defendants have drafted, uploaded and made available online at the County's website for leasing companies to secure the release of *leased* vehicles, by the same process described immediately above, except that the form for leased vehicles is "CA-5", which the County made downloadable from its website subpage http://www.suffolkcountyny.gov/Portals/0/countyattorney/Forms/CA-5%20Default%20Lease.pdf.

46.    As the individual County defendants openly disclose to lienholders, leasing companies, and their representatives, all they are required to do to secure the release of a seized vehicle is to go to the County's website, print out forms CA-4 or CA-5, complete and return them with a copy of their finance or lease agreement, and pay the storage charges.

47.    Exhibit "C," is a letter from Assistant County Attorney ("ACA") defendant Drew Schirmer wherein Mr. Schirmer explicitly advised a lienholder, TD Auto Finance LLC, "Once these documents are submitted we will release the vehicle."

48.    Exhibit "D," is a letter from Assistant County Attorney ("ACA") Steve Fiore-Rosenfeld, wherein Mr. Fiore-Rosenfeld explicitly advised an attorney for another lienholder, Santander Consumer USA Inc., that if he went to the County's website and submitted the completed forms from same, his client would be permitted to "pick up the vehicle."

49.    Upon information and belief, private attorneys for the largest automobile manufacturers, leasing companies and auto finance companies in the world, have explicitly advised the individual County defendants that their practices clearly violate the U.S. Constitutional constraints detailed by the United States Court of Appeals For the Second Circuit in <u>Alexandre</u> and the due process rights of vehicle owners and lessees.

50.     By way of example, annexed hereto as Exhibit "E" is a letter dated November 30, 2015, from Rudolph J. Meola, an attorney representing American Honda Finance Corporation, wherein Mr. Meola explicitly advised ACA defendant Jacqueline Caputi that the County's practices violate the Second Circuit Court of Appeals' ruling in Alexandre v. Cortes.

51.     As reflected by the handwritten response written on the lower right side of the letter, ACA Jacqueline Caputi responded to Mr. Meola's letter by merely handwriting on the letter that "the lienholder may file documents on our website to retrieve the vehicle" *See* Exhibit "E."

52.     As reflected upon the fax header on the letter, the letter, with defendant Caputi's handwritten response to Mr. Meola's objection to the County's process, was faxed back to Mr. Meola's office on 12/2/2015, at 10:53 a.m., from the Office of the Suffolk County Attorney, from fax telephone number (631) 853-5306.

53.     Time and time again, the individual County defendants were advised, in writing, by attorneys for lienholders and leasing companies that the County defendants' practice of releasing vehicles to such third parties without affording owners with notice or a procedure to voice their objection to such release before a neutral decision-maker, violated the due process constraints made clear in Alexandre v. Cortes.

54.     Time and time again, the defendants' response was to ignore these objections entirely and to reiterate their directives which were "just go to our website, print out the forms, and we'll release the vehicle." *See* Exhibit "F," wherein an attorney representing TD Auto Finance LLC explicitly advised defendant Jacqueline Caputi that releasing a vehicle to the lienholder without affording the owner a hearing before a neutral decision-maker would violate the holding in Alexandre.

12

55.    As reflected on Exhibit "F," defendant Jacqueline Caputi responded to that correct assertion of law by writing back to the attorney that the lienholder could simply obtain the forms from their website, complete and file them, and the County would then release the subject vehicle to the lienholder. *See also:*

|  |  |
|---|---|
| Exhibit "G" | Letter containing handwritten instructions for HVT Inc. to submit papers from the County's website "Form CA4" to "expedite the release of vehicle." Such handwritten instructions were transmitted to the attorney for the lienholder by facsimile transmission on 2/24/2016 at 1:22 p.m., originating from fax number (631) 853-5306, that being a fax number belonging to the Office of the Suffolk County Attorney; |
| Exhibit "H" | Letter containing handwritten instructions for Santander Consumer USA Inc. to "submit proper paperwork from our website for lienholder to pick up vehicle." Such handwritten instructions were transmitted to the attorney for the lienholder by facsimile transmission on 2/10/2016 at 11:14 a.m., originating from fax number (631) 853-5306, that being a fax number belonging to the Office of the Suffolk County Attorney; |
| Exhibit "I" | Letter containing handwritten instructions for TD Auto Finance LLC., to "submit forms on our website if lienholder wishes to move forward." Such handwritten instructions were transmitted to the attorney for the lienholder by facsimile transmission on 9/4/2015 at 3:49 p.m., originating from fax number (631) 853-5306, that being a fax number belonging to the Office of the Suffolk County Attorney; |

| Exhibit "J" | Letter containing handwritten instructions for American Honda Finance Corp. to "submit papers on our website if lienholder wants to pick up the vehicle." Such handwritten instructions were transmitted to the attorney for the lienholder by facsimile transmission on 5/11/2016 at 10:27 a.m., originating from fax number (631) 853-5306, that being a fax number belonging to the Office of the Suffolk County Attorney; |
|---|---|
| Exhibit "K" | Letter containing handwritten instructions for Toyota Motor Credit Corp to "submit forms on our website if lienholder wishes to move forward." Such handwritten instructions were transmitted to the attorney for the lienholder by facsimile transmission on 9/9/2015 at 10:06 a.m., originating from fax number (631) 853-5306, that being a fax number belonging to the Office of the Suffolk County Attorney; |
| Exhibit "L" | Letter containing handwritten instructions for Toyota Motor Credit Corp to submit "our forms." Such handwritten instructions were transmitted to the attorney for the lienholder by facsimile transmission on 8/14/2015 at 12:57 p.m., originating from fax number (631) 853-5306, that being a fax number belonging to the Office of the Suffolk County Attorney. |

56.    Upon information and belief, *the reason* defendant Caputi replied to Mr. Meola by *handwriting* her response on Mr. Meola's initial letter, and faxing it back to him, is that Ms. Caputi did not want to create a letter or e-mail communication which would memorialize her communication, because she affirmatively knew that the County's ongoing practice was in direct violation of the Court of Appeals' ruling in Alexandre.

57.    Mr. Meola continued to receive communications from multiple Assistant County Attorneys at the Suffolk County Attorneys' Office confirming that, irrespective of the Court's ruling in <u>Alexandre v. Cortes</u>, of which the individual County defendants were well aware, the County defendants continued to maintain its practice of releasing seized vehicles to third parties who simply visited the County's website, printed out the forms, completed and returned such forms, and paid the storage fees. *See* Exhibits "D" through "L."

58.    Adding insult to injury, upon information and belief, private attorneys representing lienholder and leasing companies have affirmatively directed their clients (lienholders and leasing companies) *not* to enter into such agreements offered by the County of Suffolk, because such agreements clearly violate the constitutional rights of the vehicle owners, as laid bare by the Court of Appeals' decision in <u>Alexandre v. Cortes</u>, and when that occured, the individual County defendants then attempted to *circumvent those private attorneys by communicating with the attorneys' clients directly*, and making their offers to release the vehicles directly to the attorneys' respective clients.

59.    Upon information and belief, in at least one such case, a Suffolk County Assistant County Attorney not only contacted the attorney's client directly, in writing, but when doing so, suggested to the client that the client fire their attorney, because their attorney was being an obstacle to the client settling cases with the defendant County of Suffolk.

60.     Once the lienholder or leasing company prints out the forms from the County's website, completes and returns them to the individual County defendants, the individual County defendants direct the Suffolk County impound facility that is holding the vehicles to release the respective vehicle to the lienholder or leasing company, upon the lienholder or leasing company's payment of the storage charges. *See* Exhibits "M" and "N" which consist of two such directives from the County Attorney's Office to the Impound Facility.

61.     While Exhibits "M" and "N" spuriously note that they contain "attorney work product" and/or that they were "privileged" communications, any such claims of privilege were waived when the Office of the County attorney voluntarily provided copies of same to third parties, one of which thereafter provided them to counsel for the plaintiff herein.

62.     Significantly, Exhibit "M" was transmitted to the Suffolk County Impound Facility by facsimile transmission on 2/16/2016 at 12:09 p.m., originating from fax number (631) 853-5306, that being the very same fax number belonging to the Office of the Suffolk County Attorney, from which the other facsimile transmissions described herein originated, including Exhibits "D," "E," "F," "G," "H," "I," "J," "K" and "L."

63.     At no point in the County's procedure is the owner or lessee of the respective vehicle provided with notice, or any opportunity to be heard at any hearing, to voice their objection to such release of their vehicle, or to protect their interests in same.

64.     The first time the vehicle owners learn that their vehicle was released by the County, is typically when the third party sends the vehicle owner a bill to recover not only the accelerated remaining debt under their original loan or lease but also the storage fees which the third party was required to pay to the County.

65.    Significantly, in 2012, another vehicle owner commenced a civil rights action under 42 U.S.C. §1983 in the U.S.D.C. E.D.N.Y. for the defendant County having engaged in this same unconstitutional practice in 2012, in the matter of Jorge Mateo v. County of Suffolk, 12-CV-6160 -- a case which is now ready for trial and remains pending.

66.    But despite having been sued for such unconstitutional practices in a case pending since 2012, and despite the attorneys for innumerous lienholders and leasing companies affirmatively advising them, in writing, that they are violating the clearly articulated ruling of the United States Court of Appeals in Alexandre v. Cortes, the County defendants have simply, systematically, deliberately and intentionally, continued to violate the Due Process rights of the vehicle owners and/or lessees, as described herein, for years.

### V.    The Defendants' Unconstitutional Practice is Applied Against the Plaintiff, in Violation of the Plaintiff's Constitutional Rights

67.    As of December 22, 2017, plaintiff Andrea Maddox was the owner of a 2016 BMW motor vehicle bearing Vehicle Identification Number (VIN#) 5UXWX9C51G0D86697 (hereinafter "the plaintiff's vehicle").

68.    On or about December 22, 2017, the defendant Village of Westhampton Beach, by its authorized agents and pursuant to its official policies, procedures, and customs, seized the plaintiff's motor vehicle. Annexed hereto as Exhibit "O" are the relevant pages of a Notice of Seizure and Hearing which the plaintiff received from the Westhampton Beach Police after they seized her vehicle.

69.    Thereafter, the Village of Westhampton Beach transferred possession of the plaintiff's vehicle to a third party, that being the defendant County of Suffolk, without the plaintiff's permission or consent, and without having afforded the plaintiff with notice, or an opportunity to be heard prior to such unauthorized transfer.

70.    Thereafter, under the false guise of intending to pursue an action for civil forfeiture of the plaintiff's automobile under Suffolk County Code, the County defendants caused a "retention hearing" to be conducted, at which the County defendants obtained a "determination" wherein a neutral magistrate affirmatively "directed" the County to retain possession of the plaintiff's motor vehicle *"pending resolution of a forfeiture proceeding"* *See* Exhibit "P" at page 2.

71.    But the County defendants neither retained possession of the plaintiff's vehicle nor commenced a civil action or "forfeiture proceeding" to secure civil forfeiture of same.

72.    Instead, the individual County defendants communicated with a third party lienholder, defendant M&T Bank, and released the plaintiff's vehicle to M&T, after requiring M&T Bank to sign a contractual agreement that it could not thereafter release the plaintiff's vehicle back to the plaintiff, and additionally requiring M&T Bank to pay the County six thousand ($6,000.00) dollars in "storage fees."

73.    The first time the plaintiff learned of the County's intent to release her vehicle, or that it had been released, was when she received a letter from M&T Bank advising her that M&T Bank was now in possession of her vehicle. *See* Exhibit "Q."

74.    M&T Bank then advised the plaintiff that, despite the fact that she had a contractual right to redeem any default and recover possession of her vehicle under her finance agreement with M&T Bank, M&T Bank could not honor her contractual right to redeem, because M&T Bank had subsequently entered an agreement with the defendant County, wherein M&T Bank covenanted that it could not return her vehicle to her, and thus could not honor her contractual right to redeem.

75.    In addition, M&T Bank advised the plaintiff, that she would have to pay the entire accelerated balance of her remaining loan ($39,748.83), plus an additional $6,000.00 to reimburse M&T Bank for the storage charges which M&T Bank had paid to the County, and that for each and every month that she failed to pay such total amounts in full, M&T Bank would, and did, repeatedly report her as being in default of her loan agreement, to all three major credit reporting agencies.

76.    Aside from depriving the plaintiff of any ability to contest the loss of her vehicle in any actual forfeiture action under the Suffolk County Code, the County defendants contemporaneously deprived the plaintiff of any notice, procedure or opportunity to object to the release of her vehicle to M&T Bank, by intentionally abstaining from providing her with any notice, hearing or procedure, prior to releasing her vehicle to M&T Bank, prior to inducing M&T Bank to sign an agreement wherein M&T Bank agreed that it could not return her vehicle to her, and prior to imposing a $6,000.00 storage fee and alleged lien for same upon the vehicle.

77.    The defendants disposed of the plaintiff's vehicle despite the fact that, as of the date of this complaint, the plaintiff has never been convicted of, nor plead guilty to, any type of criminal offense, violation, or even a traffic ticket, based upon which her vehicle was seized by the defendants, who have now disposed of same.

19

## VI.    The County Defendants

The County of Suffolk, Dennis M. Brown, Leonard Kapsalis
Drew W. Shirmer and Jacqueline Caputi

78.    Despite the passage of more than twenty (20) years since the Second Circuit Court of Appeals ruling in Alexandre v. Cortes, the defendant County of Suffolk, and the individual County defendants, have *not merely failed* to create or implement any policy, practice or procedure to provide the owners (or lessees) of seized vehicles with advance notice, or any form of hearing or procedure through which they can challenge the County's release of their respective vehicles to third parties. Upon information and belief, they have *intentionally abstained from* creating or implementing any such policy, practice or procedure.

79.    Upon information and belief, with the actual knowledge and consent of the County Attorney, defendant Dennis M. Brown, and a supervising Assistant County Attorney, defendant Leonard Kapsalis, and under their apparent direction, the individual County defendants have set-up and maintained an *administrative procedure* through which the individual County defendants determine the custody and disposition of seized motor vehicles which have either been seized by the County, or have been seized by one of the other municipal entities joined as defendants herein, who have thereafter transferred possession of such vehicles to the County.

80.    As intended by the County defendants, they have created and systematically employed this administrative procedure as a means of releasing such seized vehicles while:

(a)    avoiding the expenses which the County would incur if the County were to actually commence litigation to obtain judicial determinations authorizing the disposition of vehicles seized by the County;

(b)      avoiding the time and expense of determining the respective rights of persons possessing interests in such vehicles;

(c)      avoiding the time and expense of affording vehicle owners notice or a procedure through which they would be afforded an opportunity to be heard before their vehicles were released to third parties, and while

(d)      generating revenue for the County, at the expense of vehicle owners, by extracting millions of dollars in "storage fees" from third parties, the latter of whom then pursue the vehicle owners to recover repayment for same.

81.      This administrative procedure set-up, maintained and operated by the individual County defendants authorizes the Assistant County Attorneys within the Office of the Suffolk County Attorney to direct the release such seized motor vehicles to third parties, without requiring a showing of a vehicle owner's guilt of any offense, without the filing of any lawsuit, and without any judicial determinations as to the rights and interests of parties who may claim to possess conflicting rights to the use, possession and ownership of such seized vehicles.

82.      Instead of filing civil forfeiture actions within which vehicle owners would be afforded a proceeding within which they could protect their interests in their respective motor vehicles, the individual County defendants prepared County Attorney "CA" forms, which include "CA-4" (Exhibit "A") and "CA-5" (Exhibit "B"), and then caused them to be uploaded onto the County's internet website.

83.    Upon information and belief, when a leased or liened vehicle is seized by the Suffolk County Police Department, the Westhampton Beach Police Department, The Town of East Hampton Police Department, or the Village of Southampton Police Department, the employees of the County Attorney's Office, including defendants Drew W. Schirmer, and Jacqueline Caputi communicate directly with the respective leasing companies, lienholders and/or their agents.

84.    Upon information and belief, as directed and/or authorized by individual County defendants Dennis M. Brown and Leonard Kapsais, defendants Drew W. Schirmer, and Jacqueline Caputi advise lienholders and leasing companies that the County will release any vehicle for which they are a lessor or lienholder, if they simply go to the County's website, print-out "*the proper form*" (CA-4 or CA-5), return the completed form, and pay the County "storage fees" in amounts which typically range from $4,000.00 to $6,000.00 per vehicle.

85.    Acting entirely under color of state law, the County defendants thereby deprived the plaintiff of her valuable property interests described herein, without due process of law, by:

(A)    Impressing an *ex parte* lien against the plaintiff's motor vehicle in the amount of six thousand ($6,000.00) dollars without providing notice to the plaintiff of such alleged accruing fees and/or lien, and without affording the plaintiff an opportunity to challenge the supposed lien against her motor vehicle;

(B)    Releasing her motor vehicle to a third party without having afforded the plaintiff with advance notice, a hearing, or any procedure or opportunity to be heard, to contest the release of her vehicle to such third party, thereby depriving her ownership of the motor vehicle, her continuing right to use such motor vehicle, and her continuing right to possess her motor vehicle, and

22

(C)    Failing to pursue any judicial disposition or action, and instead unilaterally imposing a requirement upon the third party that the third party could never release the plaintiff's vehicle back to her, thereby depriving her of her contractual and statutory rights to redeem her vehicle from such third party (defendant M&T Bank).

86.    In doing so, the County defendants deprived the plaintiff of her property rights inclusive of her right to own her motor vehicle, her right to possess it, her right to use it, as well as her contractual and statutory rights to redeem any alleged default under her finance agreement with M&T Bank, under which she had a contractual right to retake physical possession of her vehicle.

87.    Upon information and belief, both the defendant County and each of the individual County defendants played an affirmative role in the violation of the plaintiff's rights to Due Process.

### *Monell* Liability - Defendant County of Suffolk

88.    As described herein, the defendant County of Suffolk has no policy, practice or procedure through which it provides vehicle owners (or lessees) with notice, or an opportunity to be heard, before the County releases custody and possession of motor vehicles (which had been seized from their owners), to third parties, without the knowledge or consent of the owners from whom they have been seized.

89.    Nor does the County have a policy, practice or procedure of waiting until a vehicle owner is convicted of some underlying criminal offense, petty offense or violation, before it disposes of the owners vehicle, by giving to someone other than the owner from whom it was seized.

90.     Instead, upon information and belief, the County defendants made a conscious decision to create and implement an administrative procedure to cause the Office of the Suffolk County Attorney, and the Assistant County Attorneys named as defendants herein, to determine the custody of, and direct the release of, seized vehicles in the manner described herein, while deliberately abstaining from providing vehicle owners and lessees with notice or an opportunity to object to the unauthorized release of their vehicles to third parties.

91.     Such policies and practices described herein above were not random or unauthorized acts of individual agents of the County, but are, in fact, the actual policies and practices of Suffolk County, which were, and are, being systematically carried out by the individual County defendants, as was apparently directed by, and/or authorized by, the County Attorney, defendant Dennis M. Brown, and the supervising Assistant County Attorney, Leonard Kapsalis, who, upon information and belief, actively supervises defendants Drew Shirmer and Jacqueline Caputi, who determine the custody of, and direct the release of, such vehicles.

92.     Upon information and belief, the County defendants' intentional and deliberate decision *to abstain from creating or implementing* any policy practice or procedure to provide vehicle owners with notice, a hearing or any opportunity to contest the release of the vehicle to third parties, was made by the final decision-makers for the County, including, but not necessarily limited to, defendants Dennis M. Brown (as The County Attorney), and Leonard Kapsalis, as a Supervising Assistant County Attorney.

93.     Contemporaneously, the County defendants' decision to set-up and carry out an administrative procedure through which the Office of the County Attorney and the County defendants would unilaterally determine the custody of, and direct the release of, seized vehicles to third parties, was made by the final decision-makers for the County, including, but not necessarily limited to, defendants Dennis M. Brown as The County Attorney, and Leonard Kapsalis, as a Supervising Assistant County Attorney.

94.     Because the actions described herein, and the resultant injuries sustained by the plaintiff were undertaken pursuant to policies, customs, and practices maintained by the County of Suffolk, the County is a "person" liable to the plaintiff under 42 U.S.C. §1983.

95.     Simultaneously, the defendant County is contemporaneously liable to the plaintiff because the County and/or its final decision-makers were wholly negligent in failing to properly supervise and/or train its employees within the Office of the County Attorney, and such lack of supervision and negligence were responsible for both: (a) the failure to adopt a constitutional procedure to provide owners with notice and an opportunity to be heard, as well as (b) the implantation of the unconstitutional practices and procedures described herein, which have been, and remain, widespread, ongoing, systematic, and were the proximate cause of the constitutional injuries inflicted upon the plaintiff herein.

Dennis M. Brown, Leonard Kapsalis,
Drew W. Shirmer and Jacqueline Caputi

96.     Upon information and belief, each of the individual County defendants played an affirmative role in the U.S. Constitutional deprivations asserted by the plaintiff herein.

97.     Upon information and belief, defendant Dennis M. Brown was personally involved and is liable to the plaintiff under 42 U.S.C. §1983, because, upon information and belief, he directed and/or approved the implementation of the unconstitutional administrative procedure described herein, which apparently also included his approval to use his office to prepare the forms (Exhibits "A" and "B") which were uploaded onto the defendant County's website.

98.     In the alternative, if this entire procedure was somehow created and implemented in hundreds of cases without his knowledge, and the forms to carry out such unconstitutional procedure were drafted by Assistant County Attorneys within his office without his knowledge, and they were then uploaded onto the County's website without his knowledge, and hundreds of vehicles were released at the direction of the Assistant County Attorneys under his supervision, while none of the owners of those vehicles were provided with notice or an opportunity to be heard, also without his knowledge, then he was grossly negligent in managing his subordinates who caused the unconstitutional deprivations described herein, and he is thus liable to the plaintiff, and those similarly situated, pursuant to 42 U.S.C. §1983.

99.     In similar vein, defendant Leonard Kapsalis who, upon information and belief is the supervisor who supervised and continues to supervise, defendants Drew Schirmer and Jacqueline Caputi in carrying out the administrative procedure described herein, similarly approved the unconstitutional deprivations described herein, and/or was grossly negligent in managing his subordinates who carried out such unconstitutional deprivations.

100.     Concomitantly, defendant Leonard Kapsalis is liable to the plaintiff and those similarly situated pursuant to 42 U.S.C. §1983.

101.     Defendant Drew Schirmer was personally involved in that he personally obtained the "determination" which directed the County to retain physical possession of the plaintiff's vehicle (*See* Exhibit "P" which bears defendant Schirmer's name).

102.     Upon information and belief, in direct violation of that order, but under the County's administrative procedure (*See* Exhibits "A," "C," "D," "E," "F," "G," "H," "I," "J," "K," "L," "M" and "N"), defendants Drew Schirmer and/or Jacqueline Caputi thereafter communicated with defendant M&T Bank, negotiated the release of the plaintiff's vehicle to such third party, and directed, caused and/or permitted the release of the plaintiff's vehicle to M&T Bank, without defendants Caputi or Schirmer, or anyone else, having provided notice to the plaintiff, or affording her any opportunity to object to such release.

103.     Thus, defendants Drew Schirmer and Jacqueline Caputi are individually liable to the plaintiff, and those similarly situated, pursuant to 42 U.S.C. §1983.

104.     Upon information and belief, defendants Caputi and Schirmer carried out these duties under the supervision of, and with the knowledge of, defendants Leonard Kapsalis and Dennis M. Brown.

27

105.    Upon information and belief, each of the four individual County defendants: (a) are aware of the administrative procedure described herein, (b) are aware of the fact that the procedure is implemented, in part, through use of the County's website and use of the forms which have been uploaded to same, and (c) are affirmatively aware that the procedure they are carrying out violates the constitutional rights of the owners and lessees whose vehicles the defendants release to third parties without the respective owners' knowledge or consent.

106.    No reasonable County Attorney or Assistant County Attorney could fail to understand that the practices they are carrying out are violating the rights of vehicle owners and lessees under existing law, given three indisputable facts.

107.    First, the crystal clear rule of law pronounced by The United States Court of Appeals for The Second Circuit in <u>Alexandre v. Cortes</u> was handed down more than two decades ago and has thus been clearly established law for more than twenty (20) years.

108.    Second, attorneys representing the largest automobile manufacturers, leasing companies and auto finance companies in the world, which included the attorneys for Nissan, Honda, Toyota, Infiniti, Lexus, Acura and Chrysler Capital (among others), have <u>repeatedly</u> advised the defendants, <u>in writing</u>, that their practices violate the rule of law laid bare in <u>Alexandre</u> (*See*, e.g. Exhibits "E" and "F").

109.    Third, more than five (5) years ago, another vehicle owner whose vehicle was released to a third party by the defendants filed a federal lawsuit for the very same practices and procedures, but under the apparent direction of defendant Dennis M. Brown, the County decided to: (a) have the Office of the County Attorney defend that lawsuit while (b) simply continuing the patently unconstitutional practices which are the subject of the lawsuit. *See* <u>Mateo v. County of Suffolk</u>, U.S.D.C. E.D.N.Y. Docket No. 12-CV-6160.

28

110.    The individual County defendants cannot avail themselves of absolute immunity as a defense to liability for their actions, because the defendants disposed of the plaintiff's vehicle, and the vehicles of those similarly situated, entirely through an administrative process which is intended to avoid the need for litigation. As such, the individual acts of the defendants constituted administrative duties which were not undertaken as a prosecutor within the context of litigation, or in preparation therefor.

111.    Simultaneously, the individual County defendants cannot avail themselves of qualified immunity as a defense to liability for their actions, because they knowingly and deliberately violated the plaintiff's clearly established rights of which any reasonable County Attorney or Assistant County Attorney would have known.

112.    Finally, all of the aforementioned actions carried out by the County defendants were carried out under color of state law, within the meaning of 42 U.S.C. §1983.

### VII.    The Village of Westhampton Beach
### The Town of East Hampton
### <u>The Village of Southampton</u>

113.    At all times described herein, the defendants Village of Westhampton Beach, Town of East Hampton and the Village of Southampton (hereinafter referred to as "the municipal defendants") all played an affirmative role in carrying out the County of Suffolk's unconstitutional practices described herein.

114.    Specifically, each of the municipal defendants have adopted and implemented systematic policies, practices and procedures wherein they seize vehicles, and then release those vehicles to the County of Suffolk, without the consent or authorization of the owners of such vehicles, and without affording owners, inclusive of the plaintiff and those who are similarly situated, with notice, a hearing, or any opportunity to object to the release of their respective vehicles to a third party.

115.    Each of the municipal defendants each have police departments which operate as agencies thereof.

116.    Upon information and belief, at all times described within the complaint, each of the municipal defendants' police departments seize motor vehicles while affirmatively claiming that Suffolk County Code Section 420 not only vests them with *the authority* to seize such vehicles but that such County Code provision *statutorily requires them to "seize all vehicles"* incident to any DWI arrest.

117.    *See* Exhibit "O," that being the relevant pages of a Notice of Seizure and Hearing issued by the Westhampton Beach Police Department pertaining to the Village of Westhampton Beach's seizure of the plaintiff's motor vehicle, Exhibit "R," that being a virtually identical Notice of Seizure and Hearing issued by the Town of East Hampton Police Department, and Exhibit "S" that being a virtually identical Notice of Seizure and Hearing issued by the Village of Southampton Police Department, each of which cites Suffolk County Code Section 420 and states that "The law requires the seizure of all vehicles." - *See* Exhibits "O," "R" and "S", first page, first and third paragraphs.

30

118.     Acting under color of state law, each of these three municipal defendants systematically seize motor vehicles, and then release them directly to a third party, that being the County of Suffolk, without the owners' authorization, and without affording the owners with notice or any opportunity to object to the release of their vehicles to such third party.

119.     By doing so, each of these municipal defendants have deprived the plaintiff, and those similarly situated of valuable property rights, in the ownership, possession, and use of their respective vehicles, without due process, in violation of rights guaranteed to them under the Fourteenth Amendment to the United States Constitution.

120.     Consistent with such practices, on or about 12/23/2017, the Westhampton Beach Police Department, that being an agency of the Village of Westhampton Beach, seized the plaintiff's motor vehicle described herein. *See* Exhibit "O."

121.     Thereafter, the defendant Village of Westhampton Beach released possession of the plaintiff's motor vehicle directly to a third party, that being the County of Suffolk, or an agency thereof, without the consent of, or permission from, the plaintiff.

122.     At no time prior to such release of plaintiff's motor vehicle to such third party did the defendant Village of Westhampton Beach afford the plaintiff notice or any hearing at which to object to the Village's unauthorized release of plaintiff's motor vehicle to such third party.

123.     In releasing the plaintiff's vehicle to a third party without the plaintiff's consent, and without having afforded the plaintiff with notice, a hearing, or any opportunity to be heard, the defendant Village of Westhampton Beach deprived the plaintiff of valuable property interests, in her right to own, possess and use her automobile, without due process of law, in violation of plaintiff's rights to due process guaranteed under the Fourteenth Amendment.

124.    Despite the passage of more than twenty (20) years since the decision was rendered by the United States Court of Appeals For The Second Circuit in <u>Alexandre v. Cortes</u>, the municipal defendants have wholly failed to create any policy, practice or procedure for affording the owners of such vehicles, or lessees, with advance notice, or a procedure or hearing through which they are afforded an opportunity to object to the release of their respective vehicles to such third party, or to protect their interests in their respective vehicles.

125.    In doing so, each of these municipal defendants deprived the plaintiff, and those similarly situated of valuable property rights without affording them Due Process, while acting under color of state law. Concomitantly, said municipal defendants are liable to the plaintiff, and those similarly situated, pursuant to 42 U.S.C. §1983.

### VIII.    The Class Under Rule 23 of the Federal Rules of Civil Procedure

126.    The plaintiff Andrea Maddox brings this action both on her own behalf and as a Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

<u>Class Prequisites Under Rule 23(a)</u>

127.    The members of the Class are all those persons whose motor vehicles were seized by the County of Suffolk and/or one of the other municipal defendants herein, which vehicles were then released by the defendants to third parties, within the period of three (3) years immediately preceding the filing of this complaint, without any of the defendants having afforded the members of the Class with notice or any procedure through which they were afforded an opportunity to object to such release of their respective motor vehicles.

128.   As set forth below, Class action may be properly maintained herein because: (1) the Class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact that are common to the Class, (3) the claims of the representative plaintiff are typical of the claims of the Class and (4) the representative party will fairly and adequately protect the Class.

A.   The Size of the Class

129.   While the defendant County, and the County alone, is in possession of the records which identify each and every member of the Class, it is estimated that the Class size is somewhere between 200 and 400 members.

130.   Upon information and belief, and based upon the official police seizure notices annexed to the complaint as Exhibits "O," "S" and "T," each of the municipal defendants seize motor vehicles incident to every felony DWI arrest within which the arrestee has a prior misdemeanor vehicle-related offense.

131.   The municipal defendants interpret Suffolk County Code Section 420 as *statutorily requiring* their respective police offices to seize *all* such vehicles. *See* Exhibit "O," "R" and "S" on page one, each of which states "The law requires the seizure of all vehicles or vessels, whether owned by the operator/driver or not."

132.   As reflected within the records of The New York State Department of Criminal Justice System, there were 565 felony DWI arrests in Suffolk County in 2015, 488 in 2016 and 511 in 2017, which means for that three (3) year period, the cumulative number of felony arrests totaled 1,564. *See* a true copy of NYS DCJS records reflecting same annexed hereto as Exhibit "T."

133.    Upon information and belief, statistically, of the motor vehicles which have been seized incident to DWI arrests on Long Island, thirty-two point four percent (32.4%) of such vehicles were financed, and sixteen point one percent (16.1%) of them were leased.

134.    This means that, statistically, 48.5%, or roughly 758 vehicles out of the 1,564 vehicles seized within a three (3) year period in the County of Suffolk, involved lienholders or leasing companies who were then permitted to obtain the release of such vehicles through the administrative procedure described hereinabove.

135.    As such, it is expected that the actual number of members in the Class is at least several hundred members, making the Class so numerous that actual joinder of all members is simply impracticable.

## B.    Common Questions of Law or Fact

136.    All members of the Class have virtually identical questions of law and fact.

137.    All members of the Class: (a) have had a motor vehicle which they owned or leased seized by one of the municipal defendants, or the County of Suffolk; (b) their respective vehicle was thereafter released to a third party by the municipal defendants and the County and (c) both the County and the municipal defendants failed to afford Class members with notice or a procedure or hearing through which they were afforded any opportunity to contest such release, or to protect their respective interests in their vehicle.

138.    As a result, each member of the Class was deprived of property rights in their respective ownership, right to possess and/or right to use their respective automobile, as well as their statutory and contractual rights of redemption under their respective lease or finance agreement with third parties.

139.    Each of them were similarly deprived of such property interests without due process of law, in violation of the protections guaranteed to them under the Fourteenth Amendment, and they suffered compensable monetary damages as a direct result of same.

C.    Plaintiff Andrea Maddox' Claims are
Typical of The Claims of The Class

140.    As one of those vehicle owners whose vehicle was seized by one of the municipal defendants, who released it to the County defendants without her authorization, the latter of whom then released her vehicle to a third party without her authorization, and without having afforded her notice or an opportunity to be heard, the plaintiff's claims are virtually identical to those other vehicle owners who suffered the identical deprivations at the hands of these same defendants.

D.    The Representative Plaintiff Will Fairly and
Adequately Protect The Interests of The Class

141.    In bringing this action, the plaintiff Andrea Maddox is acutely suited to adequately protect the interests of those who were injured by the defendants in precisely the same manner as they inflicted the virtually identical injuries to her.

142.    She is acutely aware of the injuries which vehicle owners sustain as a result of the defendants' actions in not only depriving her of her motor vehicle, her right to own it, possess it, and use it, but also as a result of the County defendants having arbitrarily and unilaterally imposed an ex parte "lien" upon her vehicle, they have extracted thousands of dollars based upon such purported lien, and have induced a third party to enter a contractual agreement wherein the third party contracted and covenanted that it could never release her vehicle back to her.

35

143.    To enforce her rights, the plaintiff has retained experienced civil rights and civil forfeiture counsel, who has handled more than five thousand (5,000) motor vehicle seizure cases, pertaining to vehicles which were seized incident to DWI arrests on Long Island.

144.    Her counsel has litigated such matters both on behalf of a seizing municipality (in thousands of cases), as well as on behalf of the owners of seized vehicles (in hundreds of cases) against municipalities which have included The County of Suffolk, The County of Nassau and The City of New York.

145.    Her counsel has also been prosecuting civil rights actions for over twenty-five (25) years and has successfully pursued actions under 42 U.S.C. §1983 against the defendant County of Suffolk in the United States District Court, Eastern District of New York, for civil rights deprivations which arose in connection with the County's seizure of motor vehicles.

146.    As such, the plaintiff is capable of fairly and adequately protecting the interests of the members of the Class.

<u>Type of Class Under Rule 23(b)(3)</u>

147.    Certification of the Class described herein is appropriate under Rule 23(b)(3) because the questions common to the Class *predominate* over questions which affect only individual Class members, those issues which are subject only to individualized proof.

148.    The predominating issues identical to the claim of every Class member include, but are not limited to, the following:

(a)    the defendants *wholly failed to* adopt or implement any practice or procedure to afford the owners of seized vehicles with notice, or an opportunity to be heard, before the defendants release their vehicles to third parties without their authorization or consent;

(b)    the defendants *intentionally abstained from* adopting or implementing any practice or procedure to afford the owners of seized vehicles with notice, or an opportunity to be heard, before the defendants release their vehicles to third parties without their authorization or consent;

(c)    the policies, practices, and procedures which caused the constitutional deprivations described herein were implemented by, and/or were implemented under the direction of, the final decision-makers of the respective municipal and County defendants;

(d)    the municipal and County defendants failed to properly train and/or supervise their agents, and as a result of such failures, their agents failed to implement procedures to afford vehicle owners with notice and an opportunity to be heard before their vehicles were released to third parties without their authorization or consent.

149.    Given the commonality of issues to every member of the Class, permitting this case to proceed as a Class action would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

150.    Moreover, in most of the member's claims, the individual damages would be too small for individual lawsuits to be economically feasible.

## CAUSES OF ACTION

### COUNT ONE

**Violation of Civil Rights Pursuant to title 42 U.S.C. §1983
(Procedural Due Process)**

151.    The plaintiff repeats and reiterates the allegations set forth within paragraphs "1" through "150" herein above, with the same force and effect as if fully set forth at length herein.

152.    At all times described herein, the plaintiff possessed the clearly established property rights, under New York State Law, to purchase, own, possess, use and enjoy her motor vehicle.

153.    At all times described herein, the plaintiff additionally possessed clearly established statutory and contractual rights of redemption under NY Personal Property Law §302, NY General Obligations Law §7-401, and pursuant to a written contractual agreement between the plaintiff and defendant M&T Bank. Such rights of redemption included her statutory and contractual rights to redeem her vehicle and to retake possession of her vehicle back from M&T Bank in the event that M&T Bank came into possession of her vehicle.

154.    As described herein above, defendants The County of Suffolk, The Incorporated Village of Westhampton Beach, Dennis M. Brown, Leonard Kapsalis, Drew W. Schirmer, and Jacqueline Caputi acted under color of state law to deprive the plaintiff of her property rights in the ownership, use and possession of her motor vehicle without Due Process of law, by seizing her motor vehicle, and thereafter releasing it to one or more third parties without providing the plaintiff with any form of notice or hearing whereat the plaintiff could protect her interests.

155.   Each of such defendants are individuals within the meaning of 42 U.S.C. §1983.

156.   The defendant Incorporated Village of Westhampton Beach acted under color of state law to deprive the plaintiff of her property interests in her motor vehicle, by seizing her motor vehicle, and then releasing it to a third party, that being the County of Suffolk, without providing any form of advance notice or a hearing whereat the plaintiff could protect her interests or object to the release of her vehicle to such third party, before it was released to such third party.

157.   The defendant Village of Westhampton Beach's actions in using state law to deprive the plaintiff of her property rights in the subject vehicle without notice of such deprivation and the opportunity for a hearing violates the Due Process requirement of the Fourteenth Amendment to the United States Constitution.

158.   The defendant Village of Westhampton Beach is liable to the plaintiff because:

(a)   said defendant has wholly failed to create, adopt or implement any policy, practice or procedure to afford vehicle owners with notice or an opportunity to be heard before the defendant releases their vehicles to third parties;

(b)   said defendant has, instead, implemented and maintained a policy, practice, and procedure of releasing seized cars to third parties without affording the owners with notice or an opportunity to be heard,

(c)   the release of said vehicles by the defendant without notice or an opportunity to be heard were not random or unauthorized acts, but were part of the policies, practices, and customs implemented by the defendant,

(d)   the policies, practices, and procedures complained of were authorized or permitted by the final decision-makers of the defendant; and

39

(e)     the defendant and its final decision-makers were wholly negligent in failing to properly train and/or supervise its employees and agents, and such negligence caused its agents and employees to cause the omissions and constitutionally defective practices to become implemented, which ultimately caused the constitutional injuries complained of by the plaintiff herein.

159.    Defendants County of Suffolk, Dennis M. Brown, Leonard Kapsalis, Drew W. Schirmer, and Jacqueline Caputi acted under color of state law to deprive the plaintiff of her interests in her motor vehicle by:

(a)     assessing as much as $6,000.00 in towing and storage fees against the plaintiff's vehicle, and imposing an *ex parte* "lien" for same against the plaintiff's vehicle, without have provided notice to the plaintiff or a hearing at which the plaintiff could protect her interests against such supposed "lien;"

(b)     releasing and/or causing the release of her vehicle to a third party without her consent, and without having afforded the plaintiff with notice, a hearing, or any opportunity to object to such release of her vehicle, or to protect her interests in same, and

(c)     forcing a lienholder to sign an agreement wherein the lienholder agreed to deprive the plaintiff of a contractual right of redemption, under which the plaintiff possessed a contractual right to reclaim possession of her vehicle from the lienholder in the event that she had defaulted under her finance agreement with such lienholders, and

(d)     forcing the lienholder to agree that, upon the County's release of the plaintiff's vehicle to the lienholder, the lienholder would never release it back to the plaintiff who owned it.

160.    In effectuating the deprivation of the plaintiff's right to own, use, possess and enjoy her motor vehicle, and the deprivation of the plaintiff's contractual right to redeem any default under her finance agreement, the defendants violated the plaintiff's right to procedural due process as guaranteed under the Fourteenth Amendment of the United States Constitution, and the defendants are liable to the plaintiff pursuant to 42 U.S.C. §1983.

161.    As a result of the aforesaid defendants' violations of plaintiff's procedural Due Process rights, the plaintiff has been damaged by having lost ownership, use and possession of her motor vehicle, as well as her statutory and contractual right to redeem and retake possession of her vehicle.

162.    As a result of such Due Process violations, the plaintiff has sustained monetary damages in excess of $100,000.00 and has suffered substantial and continuing injuries and damages to her personal credit rating with each of the three major credit rating companies thereby causing her to suffer continuing and increasing financial and other losses.

163.    All of the injuries described herein above were actually and proximately caused by the acts of the defendants described herein, and the plaintiff is entitled to an award of monetary judgments against each of the defendants pursuant to 42 U.S.C. §1983, and an award for attorneys fees pursuant to 42 U.S.C. §1988.

## COUNT TWO

## DUE PROCESS CLAIMS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

(Substantive Due Process - 42 U.S.C. §1983)

164.    The plaintiff repeats and reiterates the allegations set forth within paragraphs "1" through "163" herein above, with the same force and effect as if fully set forth at length herein.

165.    At all relevant times described herein, the plaintiff was the lawful owner of the 2016 BMW motor vehicle described herein, which was financed pursuant to a written contractual agreement by and between the plaintiff and defendant M&T Bank.

166.    At all times described herein, the plaintiff was vested of constitutionally protected property rights in the ownership, use, possession and enjoyment of her motor vehicle, as well as statutory and contractual rights to redeem any default under her finance agreement with defendant M&T Bank, which would have enabled her to reclaim possession of her automobile any time M&T Bank came into possession of same.

167.    As detailed herein above, defendants County of Suffolk, Dennis M. Brown, Leonard Kapsalis, Drew W. Schirmer and Jacqueline Caputi arbitrarily, capriciously and deliberately deprived the plaintiff of such property rights, and engaged in a pattern of conduct which was oppressive in a constitutional sense, and should shock the judicial conscience, in violation of the plaintiff's rights to substantive due process, as guaranteed to the plaintiff under the Fourteenth Amendment to the United States Constitution.

168.    More specifically, the County defendants obtained, and caused to be obtained, a determination and order from a neutral magistrate under false pretenses (Exhibit "P"), which determination purportedly authorized the County to retain continuing possession of the plaintiff's motor vehicle, "pending resolution of a forfeiture proceeding," by disingenuously misleading the neutral magistrate who issued such order to believe that the County defendants intended to pursue such a forfeiture proceeding.

169.    As was known to the County defendants at the time they obtained such determination and order, the defendants fully intended to avoid pursuit of any such civil forfeiture action, and to avoid any type of judicial proceeding within which the plaintiff could be afforded notice, an opportunity to be heard or an opportunity to defend and protect her rights in the motor vehicle at issue.

170.    As was known by the County defendants, under the administrative procedure implemented by the individual County defendants, upon obtaining orders such as that annexed to the Complaint as Exhibit "P," after hearings before magistrates which culminate in the issuance of determinations in the form annexed as Exhibit "P," the defendants do not thereafter file forfeiture actions.

171.    Instead, they attempt to identify and contact leasing companies and/or lienholders which possess an interest in a subject vehicle. They then unilaterally determine custody, and direct the release of seized vehicles, while avoiding judicial oversight and judicial intervention, as well as ensuring that vehicle owners receive no notice or opportunity to object to the disposition of their vehicle by the County defendants.

43

172.    Consistent with same, after obtaining the order "directing" the County to retain the plaintiff's vehicle pending resolution of a forfeiture proceeding, the County defendants then communicated directly with defendant M&T Bank, and negotiated with M&T Bank to deprive the plaintiff of not merely her rights to notice and an opportunity to be heard, before the County could release her vehicle to M&T Bank, but also to deprive her of her right to own, use, possess and enjoy her motor vehicle, as well as her contractual right to redeem any default under her contract with M&T Bank, as well as her statutorily guaranteed right to redeem vested in her by the law of the State of New York, including NY Pers.P. Law §302 and NY Gen Oblig Law §7-401.

173.    Exhibit "A" is the defendant County's "standard form agreement" known as "CA-4", for lienholders, which was drafted by the County defendants or under their supervision. CA-4 was uploaded onto the County's website, and has been, and remains, available for download from same.

174.    At page 3, paragraph "8," of the agreement (Exhibit "A"), it explicitly provides that, in signing such agreement, the "lienholder" agrees that the buyer (*i.e. the owner of the vehicle*) will not be allowed to reinstate their installment contract, negotiate a new installment contract, or "regain possession of [their] vehicle from the lienholder."

175.    This provision, which, upon information and belief, the County defendants required M&T Bank to sign before the County defendants released the plaintiff's vehicle to M&T Bank, required M&T Bank to act in direct violation of New York State laws, which not only statutorily vested the plaintiff with a right to redeem and retake possession of her vehicle from M&T Bank *See* NY Gen Oblig. Law §7-401, but also required M&T Bank's agreement with the plaintiff to explicitly provide that the plaintiff possesses that right to redeem. *See* NY Pers.P. Law §302.

176.    Then, upon receiving the executed agreement from M&T Bank, the County defendants *deliberately abstained from* affording the plaintiff notice that they were going to release her vehicle directly to M&T Bank, and deliberately deprived her of any opportunity to be heard or to object to same, those being precise actions which the United States Court of Appeals for The Second Circuit had declared to be unconstitutional more than twenty (20) years earlier in Alexandre.

177.    Given the fact that: (a) the ruling in Alexandre v. Cortes has been clearly established law for more than twenty (20) years, and (b) the attorneys for the largest automobile manufacturers in the world had explicitly advised the County defendants, in writing, that their practices were, in fact, violating the U.S. Constitutional rule of law laid bare in Alexandre, no reasonable County Attorney or Assistant County Attorney could have believed that they were not violating the due process rights of the plaintiff, and those similarly situated to the plaintiff.

178.    As a result of the aforesaid defendants' violation of plaintiff's substantive due process rights, the plaintiff has been damaged by the loss of the ownership, use, possession and enjoyment of her automobile, and has suffered substantial financial and other damage by reason of severe and ongoing damage to her credit ratings, with defendant M&T Bank now repeatedly reporting to all three major credit agencies that the plaintiff is in default of her loan agreement for her having failed to pay defendant M&T Bank the full accelerated remaining principal amount of her loan, as well as the additional sum of $6,000.00 which the County defendants had extracted from defendant M&T Bank for an *ex parte* "lien" which the County defendants had imposed upon the plaintiff's vehicle.

179.    All of the injuries described herein above were actually and proximately caused by the concerted acts of the defendants described herein.

180.    The aforesaid defendants' violation of plaintiff's due process rights were made under color of state law, which constitutes "state action" under 42 U.S.C. §1983, and accordingly, the plaintiff is entitled to an award of damages against the defendants for the injuries described herein.

## COUNT THREE

**Violation of Civil Rights Pursuant to title 42 U.S.C. §1983
(Procedural Due Process)**

## CLASS ACTION CLAIM

181.    The plaintiff repeats and reiterates the allegations set forth within paragraphs "1"

through "180" herein above, with the same force and effect as if fully set forth at length herein.

182.    Plaintiff brings this Class action claim pursuant to Federal Rule of Civil

Procedure 23, on behalf of herself and a specific Class of persons who are similarly situated.

183.    Specifically, the Class consists of all persons who owned or leased motor vehicles

that were seized by The County of Suffolk, The Incorporated Village of Westhampton Beach,

The Town of East Hampton, The Incorporated Village of Southampton, or their respective police

departments, and one or more of said defendants thereafter released the person's automobile to a

third party, without first having afforded the respective owner or lessee, from whom the

respective defendant had seized it, with notice or an opportunity to be heard - - such Class being

limited to those such individuals whose vehicles were released to a third party by one or more of

the defendants within the finite period of three (3) years immediately preceding the filing of this

complaint.

184.    At all times described herein, members of the Class possessed clearly established

property rights, under New York State Law, to purchase, own, lease, possess, use and enjoy

motor vehicles, the right to object to invalid liens or other interests attaching to their respective

vehicles.

185.    At all times described herein, members of the Class additionally possessed clearly established statutory rights of redemption created and vested in them under New York State laws, which included statutory and contractual rights to redeem defaults under loan and/or lease agreements and to thereby reacquire possession of motor vehicles which fall into the possession of a leasing or finance company.

186.    As described herein above, defendants The County of Suffolk, The Incorporated Village of Westhampton Beach, Dennis M. Brown, Leonard Kapsalis, Drew W. Schirmer, and Jacqueline Caputi, The Town of East Hampton and The Village of Southampton acted under color of state law to deprive the plaintiff, and those similarly situated to the plaintiff, of the above described rights by seizing their motor vehicles, and thereafter releasing them to one or more third parties without providing the plaintiff or members of the Class with any form of notice or hearing whereat the plaintiff and the members of the Class could protect their interests, and inducing the third parties to whom such vehicles were released to execute agreements in the forms annexed to the complaint as Exhibits "A" and "B," and which contained the terms contained therein.

187.    Each of such defendants are individuals within the meaning of 42 U.S.C. §1983.

188.    The defendant Incorporated Village of Westhampton Beach acted under color of state law to deprive the plaintiff of her property interests in her motor vehicle, by seizing her motor vehicle, and then releasing it to a third party, that being the County of Suffolk, without providing any form of advance notice or a hearing whereat the plaintiff could protect her interests or object to the release of her vehicle to such third party, before it was released to such third party.

189.    The defendant Village of Westhampton Beach's actions in using state law to deprive the plaintiff of her property rights in the subject vehicle without notice of such deprivation and the opportunity for a hearing violates the Due Process requirement of the Fourteenth Amendment to the United States Constitution.

190.    Defendants County of Suffolk, Dennis M. Brown, Leonard Kapsalis, Drew W. Schirmer, and Jacqueline Caputi acted under color of state law to deprive the plaintiff of her interests in her motor vehicle by:

(a)    assessing as much as $6,000.00 in towing and storage fees against the plaintiff's vehicle, and imposing an *ex parte* "lien" for same against the plaintiff's vehicle, without have provided notice to the plaintiff or a hearing at which the plaintiff could protect her interests against such supposed "lien;"

(b)    releasing and/or causing the release of her vehicle to a third party without her consent, and without having afforded the plaintiff with notice, a hearing, or any opportunity to object to such release of her vehicle, or to protect her interests in same, and

(c)    forcing a lienholder to sign an agreement wherein the lienholder agreed to deprive the plaintiff of a contractual right of redemption, under which the plaintiff possessed a contractual right to reclaim possession of her vehicle from the lienholder in the event that she had defaulted under her finance agreement with such lienholders, and

(d)    forcing the lienholder to agree that, upon the County's release of the plaintiff's vehicle to the lienholder, the lienholder would never release it back to the plaintiff who owned it.

191.    In effectuating the deprivation of the plaintiff's right to own, use, possess and enjoy her motor vehicle, and the deprivation of the plaintiff's contractual right to redeem any default under her finance agreement, the defendants violated the plaintiff's right to procedural due process as guaranteed under the Fourteenth Amendment of the United States Constitution, and the defendants are liable to the plaintiff pursuant to 42 U.S.C. § 1983.

192.    As a result of the aforesaid defendants' violations of plaintiff's procedural Due Process rights, the plaintiff has been damaged by having lost ownership, use and possession of her motor vehicle, as well as her contractual right to redeem her right to possess and own same.

193.    As a result of such Due Process violations, the plaintiff has sustained monetary damages in excess of $100,000.00 and has suffered substantial and ongoing damages to her personal credit rating with each of the three major credit rating companies thereby causing her to suffer continuing and increasing financial and other losses.

194.    All of the injuries described herein above were actually and proximately caused by the acts of the defendants described herein, and the plaintiff is entitled to an award of monetary judgments against each of the defendants pursuant to 42 U.S.C. §1983, as well as an award for attorneys fees pursuant to 42 U.S.C. §1988.

## COUNT FOUR

## CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS

(Conspiracy Claim - 42 U.S.C. §1983)

195.    The plaintiff repeats and reiterates the allegations set forth within paragraphs "1" through "194" herein above, with the same force and effect as if fully set forth at length herein.

196.    As reflected within Exhibit "P," on February 22, 2018, a neutral magistrate which was appointed by the defendant County of Suffolk issued a directive, wherein the magistrate "directed" the defendant County of Suffolk to retain possession of the plaintiff's vehicle pending the County's commencement and resolution of a civil forfeiture proceeding.

197.    The magistrate issued that directive by checking off a box upon a pre-typed typewritten form which had been created by and presented to the magistrate by, the County defendants herein.

198.    As both indicated on such form, and as relied upon by the magistrate in rendering such directive, the County obtained such directive from the magistrate by indicating to the magistrate that the County intended to pursue a civil forfeiture proceeding against the plaintiff's vehicle in an appropriate court of law.

199.    After having successfully obtained such directive as a basis for the County's authority to retain continuing possession of the plaintiff's vehicle, the County defendants thereafter conspired with defendant M&T Bank to deprive the plaintiff of her rights to own, use, possess and enjoy her automobile, as well as her contractual and statutory rights to redeem her vehicle, and to retake possession of same from M&T Bank, as guaranteed to her under New York Personal Property Law §302 and New York General Obligations Law §7-401.

200.   Specifically, these conspiring defendants conspired to circumvent: (a) that magistrates directive, (b) any form of judicial proceeding and (c) the plaintiff's constitutional rights to notice and a hearing or procedure at which she could object to the County releasing her vehicle to defendant M&T Bank without her consent.

201.   Upon information and belief, the conspiring defendants included defendants Drew Schirmer and Jacqueline Caputi, who carried out the defendant County's administrative procedure by determining the custody of, and directing the release of, seized vehicles to lienholders and leasing companies (*See e.g.* Exhibits "A," "B," "E," "F," "G," "H," "I," "J," "K," "L" and "P"), as well as defendants Dennis M. Brown and Leonard Kapsalis, who, upon information and belief, actively supervised, directed and approved these actions by their subordinates (defendants Drew Schirmer and Jacqueline Caputi), and defendant M&T Bank, all of whom are collectively referred to as "the conspiring defendants."

202.   Upon information and belief, each of the conspiring defendants took affirmative action in furtherance of the conspiracy.

203.   Upon information and belief, in furtherance of such conspiracy the County defendants and defendant M&T Bank communicated directly, and agreed that the plaintiff's vehicle would be, and was, released to MT&T Bank without the plaintiff's knowledge or consent, and without any of the defendants having provided the plaintiff with any notice of the defendants' intent to transfer possession of the plaintiff's automobile form the County directly to M&T Bank.

204.    Upon information and belief, the conspiring defendants agreed to circumvent the plaintiff's rights, and that the County defendants would cause the County to release the plaintiff's vehicle directly to M&T Bank, under the following terms:

(a)    The conspiring defendants agreed that M&T Bank would download, complete and submit to the County defendants a completed County form CA-4 (Exhibit "A");

(b)    The conspiring defendants agreed that the County defendants would cause the vehicle to be released to M&T Bank if, and only if, M&T Bank contracted and covenanted with the County that upon M&T Bank's receipt of the plaintiff's vehicle from the County, M&T Bank, would not honor the plaintiff's contractual or statutory rights to redeem. More specifically, said defendants conspired and agreed that upon the County's release of the plaintiff's vehicle to M&T Bank, M&T Bank could not, and would not, (i) release the plaintiff's vehicle back to the plaintiff or any of her relatives or anyone residing with her, (ii) permit the plaintiff to "reinstate" her finance agreement with M&T Bank, nor (c) negotiate a new finance agreement with the plaintiff;

(c)    The conspiring defendants negotiated that M&T Bank would pay the County amount for "storage fees,"

(d)    Finally, the conspiring defendants agreed that if M&T Bank agreed to the terms described herein above, the County defendants would release the plaintiff's vehicle to M&T Bank, without notifying the plaintiff, or affording her any opportunity or procedure to object or oppose such transfer of possession of her vehicle.

205.    In carrying out and completing such conspiracy, the conspiring defendants did, in fact, cause the County to release the plaintiff's vehicle to defendant M&T Bank, while depriving the plaintiff of notice or any procedure through which to object to such release of her vehicle, and additionally and deliberately deprived the plaintiff of her rights to own, use, possess and enjoy her vehicle, as well as her contractual and statutorily guaranteed rights of redemption and her right to retake possession of her vehicle from defendant M&T Bank.

206.    In view of the forgoing, the plaintiff is entitled to secure redress and damages from each of the conspiring defendants pursuant to 42 U.S.C. §1983.

## COUNT FIVE

## BREACH OF CONTRACT

### (State Law Claim)

207.    The plaintiff repeats and reiterates the allegations set forth within paragraphs "1" through "206" herein above, with the same force and effect as if fully set forth at length herein.

208.    Prior to December 23, 2017, the plaintiff entered a written contractual agreement with defendant M&T Bank, pursuant to which defendant M&T Bank agreed to provide the plaintiff financing for the purpose of the plaintiff's 2016 BMW/X3 motor vehicle.

209.    As was required under NY Personal Property Law §302 and NY General Obligations Law §7-401, both plaintiff's contract with M&T Bank and New York State laws vested the plaintiff with a contractual right of redemption, which vested the plaintiff with the right to redeem and retake possession of her vehicle from M&T Bank in the event that M&T Bank took possession of the plaintiff's vehicle.

210.    Under New York State law, the contract by and between the plaintiff and defendant M&T Bank included an implied covenant of good faith and fair dealing.

211.    In breach of its contractual obligations to the plaintiff, some time between February 22, 2018 and March 30, 2018 (See Exhibits "P" and "Q"), defendant M&T Bank conspired to take possession, and did take possession, of the plaintiff's vehicle directly from the County of Suffolk in a manner which violated the plaintiff's U.S. Constitutional rights.

212.    In further breach of its contractual obligations to the plaintiff, and in direct violation of New York State laws, defendant M&T Bank thereafter refused to honor plaintiff's right to redeem, and upon demand by the plaintiff to release her vehicle to her, defendant M&T Bank refused to release same, refused to accept a cure of any default on the part of the plaintiff, and explicitly advised plaintiff that M&T Bank could not honor her right to redeem because M&T Bank had contracted with the defendant County that it would never release her vehicle back to her.

213.    In further breach of its contractual obligations to the plaintiff, and in breach of its covenant of good faith and fair dealing, while refusing to permit the plaintiff to redeem her vehicle, defendant M&T Bank unlawfully accelerated the entire remaining principal balance of her loan, added an additional $6,000.00 to the amount demanded from the plaintiff without lawful basis, and thereafter repeatedly reported to all three major credit agencies, recurring monthly delinquent reports against the plaintiff's credit rating, thereby seriously damaging the plaintiff's credit rating on a continuing basis.

214.    As a result of defendant M&T Bank's breaches of contract with the plaintiff, the plaintiff has sustained the loss of ownership of her vehicle, loss of use and possession of her vehicle, the loss of financial equity which she owned in her vehicle, and substantial monetary losses.

215.    In view of the foregoing, the plaintiff is entitled to an award of damages in amounts equaling or exceeding $100,000.00, and injunctive relief in the form of an order directing such defendant to send correcting notifications to the credit agencies to whom the defendant has sent delinquent notices concerning the plaintiff.

216.    In addition, given the egregious manner within which said defendant deprived the plaintiff of clearly-established and statutorily guaranteed rights of which defendant M&T Bank was clearly aware, an award of punitive damages is warranted herein.

## COUNT SIX

## UNJUST ENRICHMENT

(State Law Claim)

## CLASS ACTION CLAIM

217.    The plaintiff repeats and reiterates the allegations set forth within paragraphs "1" through "216" herein above, with the same force and effect as if fully set forth at length herein.

218.    As described herein, in creating, carrying out and maintaining the administrative procedure described herein, the County defendants unilaterally and arbitrarily decided to not only impose unreasonable and excessive "storage fees" upon seized vehicles, but also to "impose" an *ex parte* lien for such "fees" upon seized vehicles which came into the County's possession.

56

219.    In doing so, as a condition precedent to releasing such vehicles to leasing companies and lienholders (albeit without the owner or lessee's consent), the County defendants required "satisfaction" of such ex parte imposed liens.

220.    The County defendants successfully extracted large sums of money from such companies, in amounts as high as $4,000.00 to $6,000.00 for "storage fees" for a single vehicle.

221.    These excessive and unlawfully extracted sums were more than twenty (20) times higher than what the adjacent County of Nassau charges for similar storage of seized vehicles in 2017, wherein Nassau County only charged a flat fee of $300 for towing and storage combined, and in 2018, wherein Nassau County now charges a flat fee of $400 for towing *and* storage combined.

222.    Significantly, the County defendants unlawfully extracted these excessive sums in a manner that was intended to insure that the owners of those vehicles would be deprived of any opportunity to be made aware of any such lien or purported debt for "storage fees," much less any opportunity to challenge the excessive amounts which the County defendants arbitrarily demanded for such excessive storage fees.

223.    Equally offensive is the fact that, once lienholders and leasing companies paid those excessive fees to the County defendants, the lienholders and leasing companies then extorted vehicle owners into paying those sums by advising that if the owners failed to do so, the lienholders would report the nonpayment of same as contract defaults to the three major credit agencies, thereby destroying the vehicle owners' credit ratings.

224.     To the extent that lienholders and leasing companies have done so, (as has been done by defendant M&T Bank against the plaintiff), vehicle owners have been absolutely deprived of any opportunity, whatsoever, to object to the payment of these storage fees, or the amount thereof, and they have been utterly deprived of any proceeding or procedure through which they could have challenged same, before their credit ratings have been destroyed.

225.     Upon information and belief, the amounts which the County defendants have extracted in such fashion while lacking any legal or judicial authority to do so, are believed to equal cumulative amounts well in excess of one million ($1,000,000.00) dollars.

226.     Under the circumstances described herein, the defendant County of Suffolk has received such monies, as a pure windfall, and has been unjustly enriched by the receipt of such monies, to the detriment of the plaintiff and those who are similarly situated.

227.     In view of the forgoing, it would be wholly unjust to permit the defendant County to remain unjustly enriched by the unlawful fees it extracted and received, and the plaintiffs should be awarded a monetary judgment against the County in such amounts, to collect such amounts and to distribute them between the plaintiff members to whose detriment those monies have been paid.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff prays for relief and requests that the Court render judgment as follows:

### COUNT ONE

### Procedural Due Process Claim - 42 U.S.C. §1983

(a)     Awarding the plaintiff compensatory damages, and a monetary judgment against the defendants The County of Suffolk, The Incorporated Village of Westhampton Beach, Dennis M. Brown, Leonard Kapsalis, Drew W. Shirmer and Jacqueline Caputi, jointly and severally, in the amount of $100,000.00, or in such other amounts proven at the trial of this action, together with pre-judgment and post-judgment interest; and

(b)     Awarding the plaintiff punitive damages, and a monetary judgment against the defendants Dennis M. Brown, Leonard Kapsalis, Drew W. Shirmer and Jacqueline Caputi, jointly and severally, in the amount of three million ($3,000,000.00) dollars, or in such other amounts determined by the trier of fact at the trial of this action; and

(c)     Awarding the plaintiff reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b); and

(d)     Awarding the plaintiff reimbursement for any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(e)     Awarding the plaintiff such other and further relief as this court may deem just and proper.

## COUNT TWO

### Substantive Due Process Claim - 42 U.S.C §1983

(a)      Awarding the plaintiff compensatory damages, and a monetary judgment against the defendants The County of Suffolk, The Incorporated Village of Westhampton Beach, Dennis M. Brown, Leonard Kapsalis, Drew W. Shirmer and Jacqueline Caputi, jointly and severally, in the amount of $100,000.00, or in such other amounts proven at the trial of this action, together with pre-judgment and post-judgment interest; and

(b)      Awarding the plaintiff punitive damages, and a monetary judgment against the defendants Dennis M. Brown, Leonard Kapsalis, Drew W. Shirmer and Jacqueline Caputi, jointly and severally, in the amount of three million ($3,000,000.00) dollars, or in such other amounts determined by the trier of fact at the trial of this action; and

(c)      Awarding the plaintiff reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b); and

(d)      Awarding the plaintiff reimbursement for any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(e)      Awarding the plaintiff such other and further relief as this court may deem just and proper.

## COUNT THREE

### Procedural Due Process Claim - 42 U.S.C. §1983

### <u>CLASS ACTION CLAIM</u>

(a)      Declaring this action to be a proper Class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein, and

(b)      Declaring and determining that the defendants violated the Class members' U.S. Constitutional rights, and deprived them of their property rights without due process of law, and

(c)      Granting an Order permanently enjoining the defendants from hereafter releasing seized vehicles to third parties without affording vehicle owners with notice and a procedure through which to challenge such releases before they occur, and

(d)      Awarding the plaintiff and the Class compensatory damages, and a judgment against all of the defendants, jointly and severally, and

(e)      Awarding the plaintiff and the Class pre-judgment and post-judgment interest, and

(f)      Awarding the plaintiff and the Class reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b); and

(g)      Awarding the plaintiff and the Class reimbursement for any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(h)      Awarding the plaintiff such other and further relief as this court may deem just and proper.

## COUNT FOUR

### Conspiracy Claim - 42 U.S.C. §1983

(a)    Awarding the plaintiff compensatory damages, and a monetary judgment against the defendants The County of Suffolk, The Incorporated Village of Westhampton Beach, Dennis M. Brown, Leonard Kapsalis, Drew W. Shirmer and Jacqueline Caputi and M&T Bank, jointly and severally, in the amount of $100,000.00, or in such other amounts proven at the trial of this action, together with pre-judgment and post-judgment interest; and

(b)    Awarding the plaintiff punitive damages, and a monetary judgment against the defendants Dennis M. Brown, Leonard Kapsalis, Drew W. Shirmer and Jacqueline Caputi and M&T Bank, jointly and severally, in the amount of three million ($3,000,000.00) dollars, or in such other amounts awarded at the trial of this action; and

(c)    Awarding the plaintiff reimbursement for reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b); and

(d)    Awarding the plaintiff reimbursement for any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

(e)    Awarding the plaintiff such other and further relief as this court may deem just and proper.

## COUNT FIVE

### Breach of Contract

### (State Law Claim)

(a)     Declaring that defendant M&T Bank breached its contractual obligations to the plaintiff, and violated New York State Laws, and

(b)     Declaring that defendant M&T Bank is not entitled to receive or recover any monies from or against the plaintiff, and

(c)     Awarding the plaintiff compensatory damages, and a monetary judgment against the defendant M&T Bank, in the amount of $300,000.00, or in such other amounts proven at the trial of this action, together with pre-judgment and post-judgment interest; and

(d)     Awarding the plaintiff punitive damages, and a monetary judgment against the defendant M&T Bank, in the amount of three million ($3,000,000.00) dollars, or in such other amounts awarded at the trial of this action; and

(e)     Affirmative injunctive relief, in the form of an Order, directing defendant M&T Bank to report to any credit agencies to whom it previously reported that the plaintiff was in default or defaults upon its loan repayment obligations to defendant M&T Bank, that the plaintiff was, in fact, not in default of same,

(f)     Awarding the plaintiff reasonable attorneys fees and costs, together with any additional and further relief as the Court may deem just and proper.

## COUNT SIX

**Unjust Enrichment
(State Law Claim)**

## <u>CLASS ACTION CLAIM</u>

    (a)     Declaring this action to be a proper Class action pursuant to Rules 23(a) and

(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein, and

    (b)     Declaring and determining that the defendants violated the Class members' U.S.

Constitutional rights, and deprived them of their property rights without due process of law, and

    (c)     Awarding the plaintiff and the Class a judgment against the defendant County of

Suffolk, equal to the amount of storage charges which the County collected from lienholders,

leasing companies or any other parties (other than the owners or leases of such vehicles), before

releasing seized vehicles to such third parties, within a period of three (3) years immediately

preceding the commencement of this action,

    (d)     Awarding the plaintiff and the Class reasonable attorneys fees and costs, together

with any additional and further relief as the Court may deem just and proper.

Dated: Merrick, New York
       September 20, 2018

                  Yours etc.,

                  Campanelli & Associates, P.C.

                  By: _____
                      Andrew J. Campanelli
                      *Attorneys for Plaintiff(s)*
                      1757 Merrick Avenue, Suite 204
                      Merrick, New York 11566
                      (516) 746-1600